```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/24/2023____
```

**MEMORANDUM ENDORSMENT**

US v. Okparaeke

7:17-cr-225 (NSR)
7:23-cv-03353-NSR

      The Court is in receipt of Mr. Chukwuemeka Okparaeke Defendant's letter, dated April 19, 2023 (attached) and received by mail on April 24, 2023, purporting to be a "supplement" to a previous 28 USC § 2255 motion submitted by Defendant.  On April 19, 2023, the Court received and docketed Defendant's letter, dated April 15, 2023, which the Court construed as a motion to vacate under 28 USC § 2255 (attached).

      Defendant is directed to write a letter to the Court clarifying whether he seeks to replace his motion, dated April 15, 2023 (and received on April 19, 2023), with the letter motion dated April 19, 2023 (and received on April 24, 2023.), or if the latter letter merely supplements the one that was initially submitted to the Court.  Defendant is directed to do so by May 4, 2023.

      Dated: April 24, 2023
            White Plains, NY

SO ORDERED:

_____
HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

Nelson S. Román
300 Quarropas Street
White Plains, NY 10601

Re: US v. Okparaeke, 17 Cr. 225 (NSR)

Dear Judge,

Please consider this a supplement to my original 2255 motion.

Thanks,

Emeka Okparaeke 78867054
Canaan Camp
P.O. Box 200
Waymart, PA 18472



RECEIVED
APR 24 2023
NELSON S. ROMAN
U.S. DISTRICT JUDGE
S.D.N.Y.

TRULINCS 78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

----------------------------------------------------------------------

FROM: 78867054
TO:
SUBJECT: 28 U.S.C. 2255
DATE: 04/19/2023 05:11:49 PM

Nelson S. Roman
300 Quarroppas Street
White Plains, NY 10601

Re: US v. Okparaeke, 17 Cr. 225(NSR)

Dear Judge,

Please construe the following pursuant to 28 U.S.C. 2255. Any and all statements are made under the pains and penalties of perjury pursuant to 28 U.S.C. 1746.

_____
Chukwuemeka Okparaeke

INTRODUCTION

Okparaeke moves the court to vacate Count Two of his criminal information.

DISCUSSION

1. Okparaeke is innocent of Count Two because a controlled substance analogue cannot be an "analogue of fentanyl" as described in Count Two.

Count Two of the criminal information alleged that Okparaeke violated 21 U.S.C. 960(b)(1)(F), in January and February of 2017, by importing into the United States 100 grams or more of a controlled substance analogue under 21 U.S.C. 802(32), which was also "an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide ('fentanyl' herein). The statute does not define the phrase "analogue of 'fentanyl'" but Congress did define it precisely in the accompanying legislative committee report and stated that these enhanced penalties were not applicable to controlled substance analogues.

The enhanced penalty provisions applicable to fentanyl analogues were amendments added to the Controlled Substances Act in the Anti-Drug Abuse Act of 1986. See Pub. L. No. 99-570 && 1002 (amending 21 U.S.C. 841(b)(1)), 1202 (inserting 21 U.S.C. 813), and 1203 (inserting definition of controlled substance analogue). This omnibus legislation included a number of legislative changes, such as the enhanced penalties for fentanyl analogues, id. at && 1201-1204. Before it was included in the House version of the 1986 Act, the House Judiciary Committee approved the Narcotic Penalties and Enforcement Act of 1986, containing language that is substantially similar to what was ultimately enacted. The House Judiciary Committee Report accompanying that legislation explained that the term "analogue of fentanyl" refers to "a controlled substance that is an analogue of fentanyl", but it "does not include fentanyl, nor does it included controlled substance analogues'. H.R. Rep. No 99-845, at 17 n.2. Given the complete silence in the statute, 21 U.S.C. 960(b)(1)(F)'s use of the phrase "any analogue of 'fentanyl'" only applies to controlled substances and not to controlled substance analogues. As the Second Circuit Court of Appeals has stated, "Because a conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent." Railway Labor Executive Ass'n v. ICC, 735 F.2d 691, 701 (2d Cir. 1984) It is clear from this report that it was Congress's intent to apply the enhanced penalties of 21 U.S.C. 960(b)(1)(F) to controlled substances only.

A district court in the Second Circuit has also examined this and determined that "analogue of 'fentanyl'" only applies to controlled substances. "Thus, the Committee's report demonstrates that when the statute was enacted, Congress considered the term "fentanyl analogue" to be different from the more generalized term "controlled substance analogue" even though fentanyl is a controlled substance. In other words, the legislative history shows that Congress considered a controlled substance analogue and an analogue of fentanyl to be definitionally and conceptually different." US v. McCray, 346 F. Supp. 3d 363, 369 (2d Cir. 2018) The Seventh Circuit has also ruled that "any analogue of 'fentanyl'" and "controlled substance analogue" are different. "The problem for Johnson is that the term "controlled substance analogue" does not appear in [section] 841(b)(1)(A)(vi) where the fentanyl analogue language is, and the term is treated separate and apart from "any analogue of [fentanyl]." Congress specifically used the term "controlled substance analogue" in other sections of the statute, see 841(b)(7)(A)(vi)... Thus, "controlled substance analogue" is not the same as "any analogue of [fentanyl]." US v. Johnson, 47, F.4th 535, 2022 U.S.

TRULINCS 78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

---

App. LEXIS 13-14 (7th Cir. 2022) Most weighty to this calculus is the Second Circuit ruling which determined that "any analogue of 'fentanyl'" is different from "controlled substance analogue". "But nowhere... does the term "controlled substance analogue" appear; and where that specialized term does not appear, we have no reason to apply its specialized definition." See US v. McCray, 7 F. 4th 40, 2021 U.S. App. LEXIS 12 (2d Cir. 2021) Okparaeke's plea was inherently contrary to the Second Circuit's ruling in McCray because the Government alleged that "controlled substance analogue" and "analogue fentanyl" were the same.

The proper statute for prosecuting the importation of a controlled substance analogue is 21 U.S.C. 960(b)(3) not 21 U.S.C. 960(b)(1)(F). Under 21 U.S.C. 813, a "controlled substance analogue shall ... be treated, for the purpose of any Federal law as a controlled substance in schedule I". The phrase "controlled substance in schedule I" is in 21 U.S.C. 960(b)(3): "In the case of a violation under subsection (a) of this section involving a controlled substance in Schedule I ... the person committing such violation shall... be sentenced to a term of imprisonment not more than 20 years..." It is clear that Congress intended for the importation of controlled substance analogues to be prosecuted under this statute because they used the specific phrase in 21 U.S.C. 960(b)(3) and omitted it from 21 U.S.C. 960(b)(1)(F). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. US, 464 U.S. 16, 23 (1983). The Government clearly erred in this regard by offering a plea agreement with the wrong charge.

Therefore, Okparaeke is actually innocent of Count Two and could not have been guilty of committing this offense until July of 2017 when the substance became a controlled substance.

2. Okparaeke is actually innocent of Count Two because the plea allocution failed to establish that acrylfentanyl was a controlled substance analogue

Even if 21 U.S.C. 960(b)(1)(F) applied to controlled substance analogues, Okparaeke would still be innocent because the Government failed to show that the substance in question, acrylfentanyl, was a controlled substance analogue. The government simply stated that acrylfentanyl had "a substantially similar chemical and pharmacological effect of fentanyl." This statement clearly fails to establish the definition of a controlled substance analogue as set forth in 21 U.S.C. 802(32)(A). Under 21 U.S.C. 802(32)(A), a controlled substance analogue is defined as a substance:

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similiar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or schedule II.

There was not an iota of evidence presented to the magistrate taking the plea about the second prong or third prong of the 21 U.S.C. 802(32)(A). No information was given about the possible stimulative, depressive or hallucinogenic effect of acrylfentanyl; there was also no indication that Okparaeke marketed acrylfentanyl consistent with the prohibitions in the third prong. Also, the government failed to establish any factual basis that acrylfentanyl had a chemical structure substantially similiar to a controlled substance in schedule I or II. All they presented was a perfunctory statement about possible testimony. The Government never presented any information about how the chemist came to this conclusion or whether the chemist had examined a diagram of the chemicals and compared them. Without this evidence, Okparaeke is clearly innocent of the charge.

When fulfilling its obligation at a plea allocution to determine whether a defendant's admitted conduct is a crime, a court is "free to rely on any facts at its disposal," including information obtained by making an "inquiry... of the attorneys for the government", as long as "the facts relied on are placed on the record at the time of the plea." US v. Maher, 108 F.3d 1513, 1524-25 (2d Cir. 1997). Rule 11 thus "requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty" such that, "were a jury to accept [those admissions] as fact ... a guilty verdict would follow." US v. Albarran, 943 F.3d 106, 121 (2d Cir. 2019) Therefore, Okparaeke is actually innocent of Count Two because there was no information that acrylfentanyl was a controlled substance analogue as described in 21 U.S.C. 802(32)(A) and no jury would have found Okparaeke guilty based on the single conclusory statement from the government.

3. Okparaeke is actually innocent of Count Two because the plea allocution failed to establish that the SDNY was the proper venue

TRULINCS 78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

------------------------------------------------------------------------------------------

The plea proceeding also failed to establish another important fact: that the charged importation offense occurred in the Southern District of New York. Venue for importation offenses is specifically controlled by Congress in 18 U.S.C. 3237, which provides that "any offense involving...the importation of an object... into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, amy be inquired of and prosecuted in any district from, through, or into which such...imported object move[s]." The imported object in this case, a package of acryl fentanyl, did not move from, through, or into the Southern District of New York.

As Okparaeke explained during his guilty plea proceeding, while the imported substance was "supposed to be delivered to a UPS mailbox in Middletown," a location within the SDNY, the authorities instead "did a controlled delivery. As you know probably though all your experience, law enforcement will switch the substance with like a sham substance. That's what they did in my case. They had intercepted packages like at JFK and then they had done like a controlled delivery." The airport (JFK) where the packages were intercepted is located in Queens County, which is within the Eastern District of New York. See 28 U.S.C. 112(c) ("The Eastern District comprises the counties of Kings, Nassau, Queens, Richmond and Suffolk")

Since the imported package of acryl fentanyl was intercepted in the EDNY and never transferred to any address in the SDNY (where only the sham substance was delivered), the SDNY was the improper venue for the prosecution of this offense.

Therefore Okparaeke is innocent of count two because the venue for importation into the SDNY was clearly invalid.

CONCLUSION

In conclusion, Okparaeke asks that Count Two be vacated because he is clearly innocent. If the court disagrees Okparaeke requests that a certificate of appealability.

Thanks,

Chukwuemeka Okparaeke 78867054
Canaan Prison Camp
Waymart, PA 18472

⇔78867-054⇔
Emeka Okaaeeke
P.O. 200 Federal Prison Camp
Waymart, PA 18472
United States

THIS CORRESPONDENCE IS FROM AN INMATE
CURRENTLY IN THE CUSTODY OF
THE FEDERAL BUREAU OF PRISONS


FOREVER / USA


RECEIVED
APR 24 2023
NELSON S. ROMAN
U.S. DISTRICT JUDGE
S.D.N.Y.

⇔78867-054⇔
Nelson Roman
300 Quarropas ST
White Plains, NY 10601
United States

10601-414000

TRULINCS 78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A   Date: 4 / 19 / 2023

---

FROM: 78867054
TO:
SUBJECT: 28 U.S.C. 2255
DATE: 04/15/2023 07:05:41 PM

Nelson S. Roman
300 Quarroppas Street
White Plains, NY 10601

Re: US v. Okparaeke, 17 Cr. 225(NSR)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/19/2023

Dear Judge,

Please construe the following pursuant to 28 U.S.C. 2255. Any and all statements are made under the pains and penalties of perjury pursuant to 28 U.S.C. 1746.

_____
Chukwuemeka Okparaeke

RECEIVED
APR 19 2023
NELSON S. ROMÁN
U.S. DISTRICT JUDGE
S.D.N.Y.

Introduction

Okparaeke moves the court to vacate Count Two of his criminal information.

DISCUSSION

1. Okparaeke is innocent of Count Two because a controlled substance analogue cannot be an "analogue of fentanyl" as described in Count Two.

Count Two of the criminal information alleged that Okparaeke, in January and February of 2017, imported into the United States 100 grams or more of a controlled substance analogue under 21 U.S.C. 802(32), which was also "an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide ('fentanyl' herein). The statute does not define the phrase "analogue of 'fentanyl'" but Congress did define it precisely in the accompanying legislative committee report and stated that it excluded controlled substance analogues. The enhanced penalty provisions applicable to fentanyl analogues were amendments added to the Controlled Substances Act in the Anti-Drug Abuse Act of 1986. See Pub. L. No. 99-570 && 1002 (amending 21 U.S.C. 841(b)(1)), 1202 (inserting 21 U.S.C. 813), and 1203 (inserting definition of controlled substance analogue). This omnibus legislation included a number of legislative changes, such as the enhanced penalties for fentanyl analogues, id. at && 1201-1204.

Before it was included in the House version of the 1986 Act, the House Judiciary Committee approved the Narcotic Penalties and Enforcement Act of 1986, containing language that is substantially similar to what was ultimately enacted. The House Judiciary Committee Report accompanying that legislation explained that the term "analogue of fentanyl" refers to "a controlled substance that is an analogue of fentanyl", but it "does not include fentanyl, nor does it included controlled substance analogues'. H.R. Rep. No 99-845, at 17 n.2. Given the complete silence in the statute the court has to define 21 U.S.C. 960(b)(1)(F)'s use of the phrase "any analogue of 'fentanyl'" as only inclusive of controlled substances. As the Second Circuit Court of Appeals has stated, "Because a conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent." Railway Labor Executive Ass'n v. ICC, 735 F.2d 691, 701 (2d Cir. 1984)

A district court in the Second Circuit has also examined this and determined that "analogue of 'fentanyl'" only applies to controlled substances. "Thus, the Committee's report demonstrates that when the statute was enacted, Congress considered the term "fentanyl analogue" to be different from the more generalized term "controlled substance analogue" even though fentanyl is a controlled substance. In other words, the legislative history shows that Congress considered a controlled substance analogue and an analogue of fentanyl to be definitionally and conceptually different." US v. McCray, 346 F. Supp. 3d 363, 369 (2d Cir. 2018) The Seventh Circuit has determined that "any analogue of 'fentanyl'" and "controlled substance analogue" are different. "The problem for Johnson is that the term "controlled substance analogue" does not appear in [section] 841(b)(1)(A)(vi) where the fentanyl analogue language is, and the term is treated separate and apart from "any analogue of [fentanyl]." Congress specifically used the term "controlled substance analogue" in other sections of the statute, see 841(b)(7)(A)(vi)... Thus, "controlled substance analogue" is not the same as "any analogue of [fentanyl]." US v. Johnson, 47, F.4th 535, 2022 U.S. App. LEXIS 13-14 (7th Cir. 2022) Most weighty to this calculus is the Second Circuit ruling which determined that "any analogue of 'fentanyl'" is different from "controlled substance analogue". See US v. McCray, 7 F. 4th 40, 2021 U.S. App.

TRULINCS 78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

---

LEXIS 12 (2d Cir. 2021)

The proper statute for prosecuting the importation of a controlled substance analogue is 21 U.S.C. 960(b)(3) not 21 U.S.C. 960 (b)(1)(F). Under 21 U.S.C. 813, a "controlled substance analogue shall ... be treated, for the purpose of any Federal law as a controlled substance in schedule I". The phrase "controlled substance in schedule I" is in 21 U.S.C. 960(b)(3): "In the case of a violation under subsection (a) of this section involving a controlled substance in Schedule I ... the person committing such violation shall... be sentenced to a term of imprisonment not more than 20 years..." It is clear that Congress intended for the importation of controlled substance analogues to be prosecuted under this statute because they used the specific phrase in 21 U.S.C. 960(b)(3) and omitted it from 21 U.S.C. 960(b)(1)(F). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. US, 464 U.S. 16, 23 (1983). The Government clearly erred in this regard.

Therefore, Okparaeke is actually innocent of Count Two and could not have been guilty of committing this offense until July of 2017 when the substance became a controlled substance.

2. Okparaeke is actually innocent of Count Two because the plea allocution failed to establish that acrylfentanyl was a controlled substance analogue

Even if 21 U.S.C. 960(b)(1)(F) applied to controlled substance analogues, Okparaeke would still be innocent because the Government failed completely to show that the substance in question, acrylfentanyl, was a controlled substance analogue. The government simply stated that acrylfentanyl had "a substantially similar chemical and pharmacological effect of fentanyl." This statement clearly fails to establish the definition of a controlled substance analogue as set forth in 21 U.S.C. 802(32)(A). Under 21 U.S.C. 802(32)(A), a controlled substance analogue is defined as a substance:

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or (rest omitted)

There was not an iota of evidence presented to the magistrate taking the plea about the second prong of the 21 U.S.C. 802(32) (A). No information was given about the possible stimulative, depressive or hallucinogenic effect of acrylfentanyl. Without this evidence there is no evidence of Okparaeke's guilt.

Therefore, Okparaeke is actually innocent of Count Two because there was no information that acrylfentanyl was a controlled substance analogue as described in 21 U.S.C. 802(32)(A).

3. Okparaeke is actually innocent of Count Two because the plea allocation failed to establish that the SDNY was the proper venue

The plea proceeding also failed to establish another important fact: that the charged importation offense occurred in the Southern District of New York. Venue for importation offenses is specifically controlled by Congress in 18 U.S.C. 3237, which provides that "any offense involving...the importation of an object... into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, amy be inquired of and prosecuted in any district from, through, or into which such...imported object move[s]." The imported object in this case, a package of acyrl fentanyl, did not move from, through, or into the Southern District of New York.

As Okparaeke explained during his guilty plea proceeding, while the imported substance was "supposed to be delivered to a UPS mailbox in Middletown," a location within the SDNY, the authorities instead "did a controlled delivery. As you know probably though all your experience, law enforcement will switch the substance with like a sham substance. That's what they did in my case. They had intercepted packages like at JFK and then they had done like a controlled delivery." The airport (JFK) where the packages were intercepted is located in Queens County, which is within the Eastern District of New York. See 28 U.S.C. 112(c) ("The Eastern District comprises the counties of Kings, Nassau, Queens, Richmond and Suffolk")

Since the imported package of acryl fentanyl was intercepted in the EDNY and never transferred to any address in the SDNY (where only the sham substance was delivered), the SDNY was the improper venue for the prosecution of this offense.

Therefore Okparaeke is innocent of count two because the venue for importation into the SDNY was clearly invalid.

CONCLUSION

TRULINCS 78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

----------------------------------------------------------------------------------

In conclusion, Okparaeke asks that Count Two be vacated because he is clearly legally innocent. If the court disagrees Okparaeke requests that a certificate of appealability be issued.

Thanks,

Chukwuemeka Okparaeke 78867054
Canaan Prison Camp
Waymart, PA 18472



Shuk Wutmert Uatmknere #78867-054
Canaan Federal Prison Camp
Waymart, PA 18472
P.O. Box 200

LEHIGH VALLEY PA 180
17 APR 2023 PM 4 L

78867-054
Nelson Roman
300 Quarropas ST
White Plains, NY 10601
United States

THIS CORRESPONDENCE IS FROM AN INMATE
CURRENTLY IN THE CUSTODY OF
THE FEDERAL BUREAU OF PRISONS

10601-414000



RECEIVED
APR 19 2023
NELSON S. ROMÁN
U.S. DISTRICT JUDGE
S.D.N.Y.