

January 26, 2026

**VIA ECF**
The Honorable Nelson S. Roman
United States District Judge
United States District Court
300 Quarropas Street
White Plains, New York 10601

        RE:        ***United States v. Chuckwuemeka Okparaeke***
                      **17 Cr. 225 (S-4) (NSR)**
                      **23 Civ. 3353 (NSR)**

Dear Judge Roman:

      On April 19, 2023, Mr. Okparaeke filed a 28 U.S.C. § 2255 petition in this Court. The government filed a response. In July 2023, upon Mr. Okparaeke's request, the Court appointed me to assist Mr. Okparaeke with his § 2255 petition. On September 23, 2023, I filed a memorandum of law in support of Mr. Okparaeke's petition, which was corrected on October 4, 2023. Upon the Court's request, the government submitted an additional response on November 26, 2025.

      On January 8, 2026, this Court issued a decision denying Mr. Okparaeke's petition. *See* ECF No. 274. In its opinion, the Court did not, however, decide whether or not to grant Mr. Okparaeke a Certificate of Appealability, pursuant to 18 U.S.C. § 2253(c). I write now to respectfully request that, in light of the complicated legal issues in this case and the lack of clear precedent, this Court issue a Certificate of Appealability to permit Mr. Okparaeke to litigate these issues before the Second Circuit.

      This Court denied Mr. Okparaeke's §2255 petition entirely on the ground that it was procedurally barred. Mr. Okparaeke's challenge to Count 2 of the superseding information to which he pled guilty rested on the argument that although he had failed to raise the claim on direct appeal, it was not procedurally barred on habeas because he is actually innocent of Count 2. The Court determined that the "actual innocence gateway" was not available to Mr. Okparaeke because he was not "factually" innocent as required by *Bousley v. United States,* 523 U.S. 614, 623 (1998). According to this Court, Mr. Okparaeke was not factually innocent because he admitted "knowingly import[ing] more than 100 grams of acryl fentanyl intended for human consumption and that the substance was substantially similar to fentanyl." *Decision* at 4.

      This conclusion was not the basis for the government's argument and appears to misapprehended Petitioner's claim. Mr. Okparaeke pled guilty to count 2, which required him to be guilty of importing 100 grams or more of an analogue of fentanyl, in violation of

21 U.S.C. § 960(b)(1)(F).  The factual basis for that plea was Mr. Okparaeke's admission that he imported more than 100 grams of acryl fentanyl.  The parties agree that acryl fentanyl, at the time Mr. Okparaeke imported it, was not a controlled substance.  Instead, it was a "controlled substance analogue" as defined in 21 U.S.C. § 802(32).  The definition of "controlled substance analogue" excludes scheduled controlled substances.  21 U.S.C. § 960(b)(1)(F) does not prohibit the importation of controlled substance analogues.  In other words, if Mr. Okparaeke is right that acryl fentanyl is not an "analogue of fentanyl" but is instead a "controlled substance analogue" – a technical but important distinction – he is *factually*, not just legally, innocent of Count 2.  Factual innocence does not require innocence of all criminal conduct; it requires innocence of the count of conviction.  *See e.g. Bousley*, 523 U.S. 624 ("the Government maintains that petitioner must demonstrate that he is actually innocent of both "using" and "carrying" a firearm in violation of § 924(c)(1). But petitioner's indictment charged him only with 'using' firearms in violation of § 924(c)(1) . . . Accordingly, petitioner need demonstrate no more than that he did not 'use' a firearm as that term is defined.").

The second basis for the Court's conclusion that Mr. Okparaeke's claim was procedurally barred was the ground on which the government's opposition rested: "Where the Government has forgone more serious charges as part of a plea agreement, *Bousley* requires the petitioner—as a prerequisite to passing through the actual-innocence gateway—to establish actual innocence of those charges as well." Decision, at 4.  Whether the count that the government forewent as part of the plea agreement was *more* serious than Count 2 depends on how "seriousness" is measured.  This Court states that the foregone count was more "serious" because it had a higher statutory minimum sentence – 20 years to life versus 10 years to life for Count 2.  *See* Decision at 4-5.  But this conclusion is at odds with the circuit courts that have addressed this issue.  Those courts have concluded that the proper measure of seriousness is the sentencing guidelines, not statutory maximums or minimums.  *See e.g. United States v. Caso*, 723 F.3d 215, 223 (D.C. Cir. 2013) ("the appropriate measure of the seriousness of an offense must be derived from the Sentencing Guidelines rather than the statutory maximum penalty."); *United States v. Halter*, 217 F.3d 551, 553 (8th Cir. 2000) ("We are of the opinion that actual punishment as determined by the Guidelines is the proper basis for identifying the 'more serious charge'.").  Indeed, the government's opposition "assum[es] *arguendo* that the *sentencing guideline ranges* of the relevant counts are the deciding factor in determining which count is more serious" and focuses on the guidelines.  11.26.25 Gov. Opp. at 1 (internal quotation marks omitted).

The parties appear to agree that neither ground on which the Court found procedural default applies in this case.  The sole question should have been whether the forgone count was "more serious" than Count 2, using the guidelines as the appropriate measure, a question the Court failed to address.  Accordingly, the Court should issue a Certificate of Appealability to permit Mr. Okaparaeke to press this claim in the Court of Appeals.

Because the Court denied Mr. Okparaeke's petition solely on procedural default grounds and failed to reach the merits, the complicated question of whether Mr. Okparaeke was wrongfully convicted of a count for which there was no factual basis remains undecided.  One of the reasons the Second Circuit should analyze the merits of this issue is

Miedel & Mysliwiec LLP
52 Duane Street, 7th Floor • New York, New York 10007 • (T) 212-616-3042 • (F) 800-507-8507 • www.fmamlaw.com

that both parties use and rely on *United States v. McCray*, 7 F.4th 40 (2d Cir. 2021). Mr. Okparaeke argues that *McCray* held that an "analogue of fentanyl" is not synonymous with the definition of "controlled substance analogue," whereas the government states that *McCray* did not hold "that a controlled substance analogue *cannot* be an analogue of fentanyl." Gov. Opp. at 3. Mr. Okparaeke believes that his interpretation of *McCray* is consistent with the statute's legislative history, which made a very clear distinction between a "controlled substance analogue" and "analogues of fentanyl." The government rejects that claim.

Mr. Okparaeke's argument is complicated and few courts have wrestled with it. His case would present an opportunity for the Second Circuit to clarify its ruling in *McCray*, and to take a position on whether these separate definitions can or cannot overlap. Accordingly, I respectfully request that the Court issue a Certificate of Appealability to permit Mr. Okparaeke to litigate these claims in the appropriate court.[1]

Respectfully submitted,

/s/

Florian Miedel
*Attorney for Petitioner*

cc:   Government Counsel (*via* ECF)

---

[1] If Mr. Okparaeke is correct, he will have been convicted of a very serious charge without a factual basis. This violates due process and is unquestionably a substantial deprivation of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).